## Elswick v. Ratliff, Clerk, et al.

(Decided October 12, 1915.)

### Appeal from Pike Circuit Court.

1. Elections—Primary Elections—Withdrawal After Nomination.— The requirement in the primary election law that a candidate shall state in his declaration of nomination that if he is nominated as the candidate of his party he will accept such nomination and will not withdraw, does not prevent him from resigning his nomination; but was inserted in the statute only for the purpose of requiring one who seeks a nomination from his party to be in good faith at the time and to sincerely intend to represent the party as its candidate at the ensuing election. It was contemplated by the statute that changed conditions between the primary and the regular election might authorize vacancies from other causes than death.

2.  Elections—Resignation of Nomination—Withdrawal of.—An un-
    conditional resignation of a party nomination to take effect at
    once, and which has been accepted by the party authorities, may
    not be withdrawn unless by the consent of such authorities.

HAZELRIGG & HAZELRIGG and F. T. HATCHER for appellant.

WILLIS STATON for appellees.

OPINION BY JUDGE TURNER.—Dissolving injunction.

This is a motion before me to dissolve an injunction granted by the Judge of the Pike Circuit Court enjoining the clerk of the Pike County Court from placing the name of S. T. Isom upon the ballot at the approaching November election as the Democratic nominee for circuit clerk of that county, and adjudging K. B. Elswick to be the Democratic nominee for that office, and directing the clerk of the county court to place his name upon the ballot as such.

At the primary election in August, 1915, K. B. Elswick was nominated for clerk of the Pike Circuit Court on the Democratic ticket without opposition and his certificate of nomination was duly issued to him.

Thereafter, and on September 11th, 1915, in a writing duly acknowledged by him, he withdrew as the Democratic nominee and directed the clerk of the Pike County Court not to have his name placed on the official ballot at the November election; but on the following day he withdrew this paper and in some way regained possession of it from the clerk, and it does not appear from the record that the same was ever filed in the clerk's office. Thereafter, and on the 13th day of September, 1915, he again, by writing directed to the clerk of the Pike County Court, duly acknowledged, withdrew as the nominee of the Democratic party and directed the clerk not to place his name on the official ballot. This writing appears to have been filed in the office on September 13th, 1915.

On that same day at a meeting of the Democratic Executive Committee of Pike County, a sub-committee which had been appointed by the chairman of the committee made a report recommending that the said resignation of Elswick be accepted, and this report was unanimously adopted by the committee. Thereupon George W. Coleman was nominated by the committee to fill the vacancy caused by the resignation of Elswick, and a certificate of nomination issued to him.

Thereafter, and on the 16th day of September, 1915, said Coleman, by writing duly acknowledged by him, resigned said nomination and directed the clerk not to print his name on the official ballot.

On the 25th of September, Elswick notified the clerk of the Pike County Court in writing that he still claimed to be the Democratic nominee for circuit clerk and undertook to withdraw and revoke his former resignation, and of this action the Democratic Executive Committee had notice.

On the 5th of October, 1915, at another meeting of the county committee, S. T. Isom was nominated to fill the vacancy caused by the resignation of Coleman and a certificate of nomination was duly issued to him.

This is an action by Elswick seeking a mandatory injunction against the clerk of the Pike County Court requiring him to place his name on the ballot as the nominee of the Democratic party for circuit court clerk, and further seeking to enjoin Isom from claiming to be such nominee.

The first contention of the plaintiff is that as a candidate in the primary is required by statute to state that if he is nominated as the candidate of his party he will accept such nomination and will not withdraw, that he therefore cannot withdraw and that nothing but his death between the primary and the general election will create a vacancy. But such is not the effect to be given to that statute; it was only for the purpose of requiring men who sought nominations to be in good faith at the time, and to sincerely represent his party as its candidate at the ensuing election. It was not contemplated by the statute that a change in a man's situation or conditions between August and November should deprive him of the right to decline to represent his party when change of conditions or circumstances in his opinion authorized it. It was not the purpose to absolutely bind him to be a candidate for an office which he did not want, or to fill an office which he had discovered did not suit him, or to act as the representative of his party when in his judgment it was not best for either. A man might be thought an ideal representative of his party in August, and by reason of unforeseen occurrences he might be thought a most unfortunate representative in November; or he might very much desire an office in August when by rea-

son of ill health, sickness in his family or changed conditions of some kind, he might not want it later.

The very provision in the primary act itself that when a vacancy occurs after any nomination, *by death or otherwise,* the governing authority of such party may provide for filling such vacancy and make such nomination, is conclusive that the legislature had in mind that vacancies might occur in nominations from other causes than death.

The only other question necessary to pass upon is whether Elswick, after having notified the county clerk in writing that he resigned his nomination, and directing that his name be not printed on the official ballot, and after this resignation, although not formally made to the party authorities, had come to their knowledge and they had accepted it and nominated another candidate, could then withdraw it and continue to be the nominee.

The case of Saunders v. O'Bannon, 27 K. L. R., 1166, was where a trustee of a graded school district resigned to take effect at a future date, and his resignation was accepted by the board at the time it was made; thereafter he undertook before the time his resignation was to take effect to withdraw the same, and this court in holding that he did not have the power to withdraw it after its acceptance, said:

"It is also clear that appellee O'Bannon, after the 27th of May, was not a legal trustee, for his resignation took effect on that day, which had been legally accepted by the board, and after its acceptance he did not have the power to withdraw it, nor did his co-appellee and himself have the power to appoint him as trustee. Their attempt to do so on the 26th of May was a nullity.

"In the case of Mimmack v. United States, 97 U. S., 426, the court in substance said that when a resignation shall have been presented to the proper authority, and the same shall be accepted, whether formally or by the appointment of a successor, it is beyond recall; it cannot be withdrawn.

"In Am. & Eng. Ency. of Law, page 424, it is said: 'A contingent or a prospective resignation, however, can be withdrawn at any time before it is accepted, and after it is accepted it seems that it may be withdrawn with the consent of the authority accepting, where no rights have intervened.'"

In this case the resignation of Elswick was unconditional, and fully relinquished his right to the nomination, and was to take effect at once. Cyc., Vol. 29, 1404, thus states the rule: 

"An unconditional resignation which has been transmitted to the authority entitled to receive it, and a resignation implied from the acceptance of an incompatible office, may not be withdrawn. But a resignation conditional in character or to take effect in the future may be withdrawn."

In 16 L. R. A. (N. S.), at page 1058, there is an instructive note dealing with this question which shows the decided weight of authority to be that an unconditional resignation, when transmitted to the proper authorities and accepted, cannot be withdrawn.

We are constrained to hold that Isom is the rightful Democratic nominee, and it follows that the injunction was wrongfully granted. Judges Carroll, Hurt and Nunn considered this motion with me and concur in this opinion.