RILEY v. CORDELL et al.

No. 33631. May 19, 1948.

Rehearing Denied June 16, 1948.

*194 P. 2d 857.*

J. B. Dudley and Clark Hurd, both of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Fred Hansen, First Asst. Atty. Gen., for respondents.

PER CURIAM. This is an original proceeding in this court commenced by the Honorable Fletcher Riley for a writ of mandamus to compel the defendants, as secretary, chairman, and member, respectively, of the State Election Board, to place his name on the primary election ballot as a candidate for the Democratic nomination for United States Senator at the July, 1948, primary election. The State Election Board rejected his application to become a candidate for nomination for said office for two reasons: (1) because petitioner is a Justice of the Supreme Court of the State of Oklahoma whose term of office will not expire until January 10, 1949, and by reason of 20 O.S. 1941 §5 he is ineligible to become a candidate for United States Senator, and (2) because prior to the filing of the notification and declaration of his candidacy for the Democratic nomination for the office of United States Senator, he had filed a notification and declaration of his candidacy for the Democratic nomination for Justice of the Supreme Court, which notification and declaration had been accepted by said Board, and the Board was of the opinion that an elector cannot be a candidate for nomination for more than one office at the same primary election.

Three questions inhere in the case and are argued by the parties. These questions are stated in the respondents' brief as follows:

"1. Is 20 O.S. 1941 §5 valid, **that is,** in so far as it prohibits a Justice of the Supreme Court of Oklahoma from becoming, during the term for which he was elected or appointed, a candidate for the office of United States Senator or for any other federal office?

"2. Do the applicable constitutional and statutory provisions of Oklahoma authorize or permit a person, duly registered as a member of one existing political party of this state, to be a candidate of said party for the nomination and/or election to more than one office at the same time?

"3. Did the filing by petitioner on April 30, 1948, 'within the time prescribed by law', of his notification and declaration of candidacy for the office of United States Senator, **operate, ipso facto,** to withdraw or vacate his notification and declaration of candidacy of April 29, 1948, for the office of Associate Justice of the Supreme Court of Oklahoma?"

The petitioner, in his petition for mandamus, paragraph 4 thereof, states:

"The petitioner has the right, under the Constitution and laws of the State of Oklahoma, to seek the Democratic nomination for the **two respective offices** for which he filed verified Notifications and Declarations; and the action of the respondents as said Election Board in rejecting his verified Notification and Declaration as a Democratic candidate for the office of United States Senator from the State of Oklahoma because he had theretofore filed his verified Notification and Declaration as a Democratic candidate for the office of Associate Justice of the Supreme Court of Oklahoma from said Supreme Court Judicial District and had become the unopposed Democratic nominee for such office; was arbitrary, wrongful, without right, and deprives him of the **absolute right** which he has to seek the Democratic nomination for the two offices at the same time. He has and had the necessary constitutional and statutory qualifications to seek the Democratic nomination for the office of Associate Justice of the Supreme Court from said Judicial District, and as to this there is no controversy." (Emphasis supplied.)

20 O. S. 1941 §5 provides:

"No Justice of the Supreme Court shall become, during the term for which he may be elected or appointed, a candidate for any office other than a judicial position."

Petitioner contends that the provisions of article 1, section 3 of the Constitution of the United States, prescribing the qualifications of United States Senators, are exclusive and that a state may not add to or take from such qualifications, and that, hence, 20 O.S. 1941 §5 does not have the effect of prohibiting him from becoming a candidate for the United States Senate. He cites in support of this contention, among other authorities, State v. Howell (Wash.) 175 P. 569, and Stockton v. McFarland (Ariz.) 106 P. 2d 328. The Attorney General as attorney for the respondents concedes this argument, and we think properly so.

Petitioner argues that there is no constitutional or statutory provision expressly prohibiting him from seeking the two nominations at the same primary election and that in the absence of such a provision he has a right to seek both nominations. In support of this argument he cites 18 Am. Jur. 256; 29 C.J.S. 201; State v. Waechter, 332 Mo. 574, 58 S.W. 2d 971, and Misch v. Russell, 136 Ill. 22, 26 N. E. 528, 12 L.R.A. 125.

The only authorities cited in support of the statement in the texts, which support the theory of the petitioner, are the two cited cases. The Waechter case is not in point, since there the candidate had properly withdrawn his first filing before he made the second filing. The statement contained in the body of the opinion which petitioner says supports his theory is based upon a statute unlike our statutes. In the Misch case, it is said that the court knows of no law preventing an elector from being a candidate for more than one office at the same time. The Illinois statutes are not referred to. We think these authorities are not helpful, and

we must look to our statutes for an answer to the question.

It is true that there is no statute of this state expressly forbidding an elector from becoming a candidate for more than one office, but the respondents call our attention to the language of 26 O.S. 1941 §162 regulating the filing of the notification and declaration necessary to be filed to enable an elector to become a candidate for "an office" and the stipulation contained in the form prescribed that the candidate will "accept such nomination" and will "qualify for said office", and they argue that the necessary inference to be drawn from these provisions is that an elector may not become a candidate for more than one office at the same primary election. We agree with this contention. Where the meaning of a statute is doubtful it should be given a construction that is reasonable, sensible, and in keeping with the public policy of the state. 50 Am. Jur. 385, 393; 59 C.J. 1013. It is the public policy of this state that these and many other public offices shall be filled by the people under the election laws, and that some of them may be filled by appointment only when an unexpected vacancy occurs. In keeping with this expressed public policy, the voters have a right to expect one seeking their suffrage to qualify and fill the office he seeks. The construction urged by the Attorney General, that no person should be permitted at the same primary election to be a candidate for nomination for two or more offices when he may fill but one, is reasonable, sensible, and in keeping with the public policy of this state. As was said in State v. Frear, 142 Wis. 320, 125 N.W. 961, 20 Ann. Cas. 633,

"The contention that to require a candidate to declare that if nominated and elected to an office he will qualify adds a qualification not required by the Constitution, we regard as untenable. It is hardly making a qualification to require a man to say that if the people see fit to nominate and elect him he will serve. The electors have the right to know whether he will or not; other-

wise, if he should decline, their votes will be thrown away. They ought to have the right to express a choice as between candidates who are willing to assume the duties of office if elected."

The fact that petitioner's filing for United States Senator was erroneously rejected by the State Election Board is of no consequence, for it was the ministerial duty of the Board to so file his notification and declaration of candidacy under 26 O.S. 1941 §162.

26 O. S. Supp. 1947 §163 provides:

"Any candidate for state or county office may withdraw as such candidate upon filing on or before the first Wednesday in May before the day fixed by law for the Regular Primary Election a withdrawal properly verified before a notary public."

Within this period, and after having filed for the office of Associate Justice of the Supreme Court, the petitioner filed his verified notification and declaration in due form for the Democratic nomination for the office of United States Senator from Oklahoma. This notification and declaration, properly verified before a notary public, contained the freely made statements, as required by statutes, that "I will accept such nomination" and "I will qualify for such office." It will be noted that the statute, supra, does not provide the form or necessary contents of such withdrawal, but only that it shall be sworn to and timely made. It is difficult to comprehend how petitioner could more forcibly or clearly have stated his intentions on April 30, 1948, than was done in the notification and declaration then filed. The only interpretation of that instrument consistent with good faith is that petitioner then intended to and did withdraw from the race for Associate Justice of the Supreme Court. To interpret this instrument otherwise would be to attribute bad faith to petitioner which this court will not do. The withdrawal need not be couched in any particular language. It is sufficient that it be properly sworn to, timely made and show the inten-

tion of the candidate to withdraw. In the supplemental or amended petition, petitioner alleged that at the time of filing for the office of United States Senator he orally informed the Secretary of the Election Board that he did not waive his filing for the office of Associate Justice of the Supreme Court. Even if made, it is wholly inconsistent with the terms and conditions of the notification and declaration on which petitioner bases his application for the writ sought, and petitioner will not be heard to urge it.

The question is: Which notification and declaration of candidacy is now the valid and existing one? The parties have cited no case bearing directly upon this question. It is clear that petitioner was qualified to be a candidate for either office. The Attorney General, however, has cited State ex rel. Bailey v. State Election Board, 197 Okla. 167, 170 P. 2d 206, the first syllabus of which it is as follows:

"Candidates for nomination by political parties and for election to public office in the State of Oklahoma are required in **good faith** to substantially comply with the provisions of statute (26 O.S. 1941 §§161, 162) which are regulatory, as contemplated by constitutional provision (sec. 6, art. 3, Const.) to **prevent fraud and preserve the purity of the ballot.**"

The Attorney General has also cited Wimberly v. Deacon, 195 Okla. 561, 144 P. 2d 447, and Gibson v. Crowder, 196 Okla. 406, 165 P. 2d 628. These cases declare the rule that when a public officer occupying one office enters upon the duties of another office, when under the law he cannot hold both offices, the acceptance of the second office operates ipso facto to vacate the first office. We think the philosophy underlying this rule is applicable to this case.

In Wimberly v. Deacon, supra, this court had occasion to construe article II, section 12 of the Constitution of this state, which article provides:

"No member of Congress from this State, or person holding any office of

trust or profit under the laws of any other State, or of the United States, shall hold any office of trust or profit under the laws of this State."

There, one Hunt, a member of the Board of Regents of the University of Oklahoma, was shown to have been called to active duty with the United States Army and, while yet a member of the Board of Regents of the University, had entered upon his duties as an officer of the Army of the United States. In construing the constitutional provision above quoted, this court said:

"The constitutional provision that no person holding any office of trust or profit under laws of any other state or of the United States shall hold any office of trust or profit under laws of the state are self-executing, so that acceptance of second or prohibited office operates ipso facto to vacate the state office first held without judicial determination of existence of a vacancy.

"A member of the Board of Regents of the University of Oklahoma who was a reserve officer and was called into active duty as a commissioned officer in the United States Army, thereby ipso facto vacated his civil office . . ."

And in the body of the opinion, it is said:

"The very purpose of the rule of ipso facto vacation by the acceptance of a prohibited office is to prevent confusion and uncertainty . . . 'The rule that acceptance of a second office operates to vacate one already held when not declared by positive provision of law seems to be based on a presumption of an election between the two offices as evidenced by the acceptance of the second. It is a certain and reliable rule, and one that is indispensable for the protection of the public. For the public has a right to know, in the case of attempted incompatible office holding, which office is held and which surrendered, and it should not be left to chance or to the uncertain whim of the office holder to determine . . . ' "

The rule of law enunciated in the Wimberly case applies with equal force and logic to the facts of the present case. For as the public has a right to know—in the case of attempted incompatible office holding—which office is held and which surrendered so as not to be left to the uncertain whim of the office holder as to which office is held and which surrendered, so have the electors the right to know, when exercising the right of franchise, that the candidate in whose favor their votes are cast will qualify for the office for which, by his solemn declaration of candidacy, he has solicited their confidence and vote. If, as by this court previously declared, incompatible offices cannot be held by a single individual, so it is likewise true that incompatible offices cannot be sought by the same candidate at the same primary election. The latter principle logically follows as a necessary corollary of the former.

We conclude (1) that petitioner was qualified to become a candidate for the Democratic nomination for United States Senator, (2) that petitioner could not become a candidate for the nomination for the two offices at the same primary election, (3) that by filing notification and declaration of candidacy for the Democratic nomination for United States Senator, petitioner canceled and withdrew his prior notification and declaration of candidacy for Justice of the Supreme Court, and (4) that a writ of mandamus should issue requiring the respondents to place his name on the ballot as a candidate for the Democratic nomination for United States Senator at the July, 1948, primary election.

This opinion is delivered "Per Curiam" for the reason that it has been prepared, after careful consideration of the issues, by the joint efforts of each and every member of the court, and reflects their composite views.

DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, CORN, GIBSON, and LUTTRELL, JJ., having certified their disqualification, HICKS EPTON, ROBERT B. HARBISON, RAY McNAUGHTON, ROBERT J. BELL, E. S. COLLIER, WILLIAM B. MOORE, and

CLARENCE McELROY were appointed in their stead.

A writ of mandamus is directed to be issued forthwith in keeping with this opinion.

HURST, C.J., ARNOLD, J., and EPTON, HARBISON, McNAUGHTON, BELL, COLLIER, MOORE, and McELROY, Special Justices, concur.

———

ARNOLD, J. (concurring specially). If you cannot occupy two incompatible offices at the same time—and you can't —you should not be permitted to run for two such offices at the same time unless specific statutory authority exists therefor. No such authority does exist under our laws. The confusion and injustice to the voters that would result from dual office seeking is apparent. Many illustrations might be given but are deemed unnecessary.

By reason of the provisions of the State and Federal Constitutions, our decisions interpreting and applying same, the provisions of our election laws and the necessary implications thereof—all referred to in our opinion—the confusion and injustice that would result from dual office seeking, impel me to say that the public policy of this state is established contrary to the contention that one may seek two or more incompatible offices at the same time. To hold otherwise would do violence to the spirit of our laws and run contrary to the public policy of this state and justice.

The conclusion is inescapable, in my judgment, that by his last and final voluntary declaration of candidacy for the United States Senate the petitioner, by election effected by operation of law, withdrew his filing for Associate Justice of this court. This being true, he is not, as contended, the nominee of the party because his withdrawal took place before the filing period closed.

Peremptory Writ of Mandamus.

HURST, C. J. On this, the 19th day of May, 1948, upon due and proper application of petitioner showing that on April 30, 1948, and within the time prescribed by law, the petitioner filed with the State Election Board of Oklahoma his verified notification and declaration of candidacy, in due form, for the Democratic nomination for the office of United States Senator from Oklahoma, which notification and declaration of candidacy the Election Board declined and refused to accept in a letter to said petitioner dated May 5, 1948, whereupon, said petitioner filed application for this court to assume original jurisdiction in the above cause for the purpose of granting a peremptory writ of mandamus compelling said Election Board to accept the notification and declaration of candidacy of petitioner as aforesaid.

The court, being fully advised in the premises, finds that a peremptory writ of mandamus should be issued herein.

It is therefore ordered, considered and adjudged that you, the said J. Wm. Cordell, George D. Key, and Frank Midgley, respondents, and each and all of you are hereby commanded that immediately after the receipt of this writ you make your records show the due filing of petitioner's notification and declaration of candidacy for the office of United States Senator from Oklahoma, and place petitioner's name upon the official 1948 primary ballot as a candidate for said office.